**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ROBERT L. MORGAN,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**BOROUGH OF FANWOOD, BOROUGH OF FANWOOD POLICE DEPARTMENT, SERGEANT THOMAS JEDIC OF THE BOROUGH OF FANWOOD POLICE DEPARTMENT, UNION COUNTY SHERIFF'S DEPARTMENT, UNION COUNTY SHERIFF'S OFFICER GLEN TRESCOTT, JOHN DOES I to X (fictitious named individuals) and ABC I to X (fictitious named entities and/or corporations),**<br><br>**Defendants.** | **Civil Action No. 11-7513 (ES)**<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

This matter comes before the Court by way of the motion for summary judgment filed by Defendants Sergeant Thomas Jedic, and Sheriff's Officer Glen Trescott[1] (collectively, "Defendants"). (D.E. No. 69). For the reasons set forth below, the Court grants Defendants' motion for summary judgment in part and reserves in part.

[1] The Court notes that the parties have referred to Defendant Trescott as both "Glen" and "Glenn." (*See* D.E. Nos. 1, 69, 72). For purposes of this motion for summary judgment, the Court follows the listing on the caption of the Complaint and refers to Defendant Trescott as "Glen."

## I. Factual Background and Procedural History[2]

This action arises out of a vehicle stop and subsequent search that occurred on January 2, 2010. While on patrol on the afternoon of January 2, 2010, Defendant Jedic observed Plaintiff Robert Morgan's Jeep traveling westbound on South Avenue in Fanwood, New Jersey. (D.E. No. 69-4, Defendant Jedic's Statement of Undisputed Material Facts ("Jedic SMF") ¶¶ 10-11). Plaintiff's car was not in good condition and had been involved in an accident roughly one week earlier. (*Id.* ¶¶ 4-5; D.E. No. 72-1, Plaintiff's Responses to Defendant Jedic's Statement of Undisputed Material Facts ("Pl. Resp. to Jedic SMF") ¶¶ 4-5). During that accident, Plaintiff's car sustained a strong rear end impact such that the driver's side door of the Jeep could not fully close. (Jedic SMF ¶ 5; Pl. Resp. to Jedic SMF ¶ 5). In an attempt to secure the door, Plaintiff had tied the door with green rope across the top of his vehicle and through the front and back windows. (Jedic SMF ¶ 5; Pl. Resp. to Jedic SMF ¶ 5). Additionally, the cover to the tail light on the driver's side was cracked as a result of the rear end collision. (Jedic SMF ¶¶ 6, 10; Pl. Resp. to Jedic SMF ¶ 6).

Upon observing Plaintiff's car, Defendant Jedic noticed that a large portion of the lens of the driver's side tail light was missing and that the driver's side door did not appear to be secured in a standard, closed position. (Jedic SMF ¶ 10). Defendant Jedic stopped the vehicle, and, as he approached Plaintiff on the driver's side, he saw that the door was tied closed with a green rope. (*Id.* ¶¶ 12-13). Defendant Jedic ultimately did not issue Plaintiff a summons for driving an unsafe vehicle because he was concerned that this charge would have significant ramifications. (*Id.*

[2] The background facts are taken from the parties' statements of undisputed material facts and the accompanying exhibits. The Court must, of course, "disregard all factual and legal arguments, opinions and any other portions of the 56.1 Statement which extend beyond statements of facts." *Globespanvirata, Inc. v. Tex. Instrument, Inc.*, No. 03-2854, 2005 WL 3077915, at *2 (D.N.J. Nov. 15, 2005). Where, as here, there is video footage related to Plaintiff's claims, the Court "view[s] the facts in the light depicted by the videotape." *See Scott v. Harris*, 550 U.S. 372, 381 (2007).

¶ 14). Rather, he only issued Plaintiff a summons for violating N.J.S.A. 39:3-66, which governs the maintenance of car lamps. (*Id.*; D.E. No. 69-3, Ex. F, Vehicle Report at 1).

At the time of the vehicle stop, carpet freshening powder covered the entire carpet surface of Plaintiff's Jeep, and an air freshener was in the front console of the car. (Jedic SMF ¶ 7; Pl. Resp. to Jedic SMF ¶ 7). According to Defendant Jedic, before he handed Plaintiff the summons and during his conversations with Plaintiff, he detected what he believed to be the smell of marijuana emanating from the vehicle. (Jedic SMF ¶ 15; *see also* D.E. No. 69-3, Ex. H, Transcript of Testimony of Thomas J. Jedic ("Jedic Dep.") at 63:10-63:13).

Plaintiff disputes that Defendant Jedic actually smelled marijuana during the vehicle stop and claims that "[t]he audio from the video taken of the traffic stop by the camera mounted on the dashboard of defendant's patrol car unequivocally confirms that neither he nor his back-up officer were ever able to smell any type of marijuana during the stop on that day." (Pl. Resp. to Jedic SMF ¶ 15). Plaintiff points to audio from the video, which captures Defendant Jedic's back-up officer informing Jedic about the overpowering smell of the air freshener. (*Id.*; D.E. No. 57, Ex. B, Fanwood Police Dashcam Video ("DVD") at 15:18:39-15:18:49 ("I don't know. That thing [i.e. the Renuzit air freshener] is so overpowering. It is so hard to say.")). Plaintiff also references Defendant Jedic's later statement to his back-up officer acknowledging the overpowering smell of the air freshener. (Pl. Resp. to Jedic SMF ¶ 15; DVD at 15:29:39-15:29:51 ("But like you said it's that, that air, that Renuzit thing is overpowering.")).

However, Defendant Jedic can be heard on the video repeatedly referencing a smell emanating from Plaintiff's car. (DVD at 15:17:04-15:17:11 (stating "he's got one of those Renuzit air fresheners in there, and I'm getting old, but I smell something"); DVD at 15:31:26-15:31:35 (telling Plaintiff "I smell something in that vehicle . . . I smell something a little strong

in there"); DVD at 15:32:58-15:33:12 (informing dispatcher, "Listen, I gave this guy a summons, but I smell something in the car . . . see if a county drug dog may be available")). Considering the entirety of the video, Defendant Jedic's single comment regarding the smell of the air freshener does not discredit his Rule 56.1 assertion that he detected the smell of marijuana during the vehicle stop. In fact, the video evidence of the traffic stop corroborates, rather than rebuts, Defendant Jedic's assertion.

Defendant Jedic ultimately asked Plaintiff if he would consent to a search of the car. (Jedic SMF ¶ 17; Pl. Resp. to Jedic SMF ¶ 17). While Plaintiff initially consented to a search, he withdrew his consent before the search began. (Jedic SMF ¶ 17; Pl. Resp. to Jedic SMF ¶ 17). Defendant Jedic then informed Plaintiff that he was going to begin the process for obtaining a search warrant and that he would be conducting an investigation. (Jedic SMF ¶ 18; Pl. Resp. to Jedic SMF ¶ 18). Defendant Jedic told Plaintiff that, while he was not under arrest, he also was not free to leave. (Jedic SMF ¶ 18; Pl. Resp. to Jedic SMF ¶ 18). Accordingly, Plaintiff remained in his vehicle. (Jedic SMF ¶ 18; Pl. Resp. to Jedic SMF ¶ 18).

Prior to contacting a County Prosecutor and Superior Court Judge to obtain a search warrant, Defendant Jedic sought to obtain a K-9 verification of the marijuana smell. (Jedic SMF ¶ 19). Defendant Jedic called Defendant Trescott, who arrived at the scene at approximately 3:52 p.m. with his dog, Onyx. (D.E. No. 69-4, Defendant Trescott's Undisputed Material Facts ("Trescott SMF") ¶ 1). Defendant Trescott conducted a dog sniff of the exterior of Plaintiff's vehicle, which lasted roughly one minute and twelve seconds. (Trescott SMF ¶ 4; D.E. No. 72-1, Plaintiff's Responses to Defendant Trescott's Undisputed Material Facts ("Pl. Resp. to Trescott SMF") ¶ 4).

According to Defendant Trescott, the dog alerted to the driver's side of the Jeep by

demonstrating interest and ultimately scratching the driver's side twice; the dog demonstrated interest in the driver's side of the car three times prior to scratching. (Trescott SMF ¶¶ 5-6; *see also* D.E. No. 72-5, Ex. B, Transcript of Testimony of Officer Glen Trescott ("Trescott Dep.") at 39:23-39:25). Plaintiff disputes that the dog sniff transpired this way and asserts that the video of the traffic stop does not show Onyx scratching Plaintiff's vehicle. (Pl. Resp. to Trescott SMF ¶ 5). Plaintiff further states that the video does not reveal Onyx demonstrating interest in any portion of the vehicle and instead the actual images in the video show Defendant Trescott "forcibly pulling Onyx back to the vehicle and banging the side of the Plaintiff's vehicle with his hand, as part of a desperate effort to get the dog interested." (*Id.* ¶ 6). Plaintiff has not proffered an expert report as authority for how to interpret dog sniffs, but rather provides his own lay interpretation of the dog's movements.

The video evidence shows that, consistent with Defendant Trescott's 56.1 Statement, Onyx demonstrated interest in the driver's side of the Jeep by wagging his tail and returning to the area three times prior to scratching. (DVD at 15:57:24-15:57:39; *see also* Trescott Dep. at 15:16-15:20 (explaining that, prior to indicating, "generally, the dog gets excited, the tail starts wagging," and the "dog will work the scent cone until it can pinpoint where the narcotics are, and then it will give an indication for the presence of narcotics")). Based on the Court's review of the video, the Court does not discern any manipulation of the dog sniff on Defendant Trescott's part.

Unfortunately, certain critical moments of the dog sniff are partially obscured by Defendant Jedic, who was standing in front of the camera. However, the dog can be seen twice moving his left front paw by the driver's side of the vehicle, and two scratches are audible during this timeframe. (DVD at 15:57:39-15:57:41). Furthermore, Defendant Trescott testified during his deposition that Onyx gave a positive indication by "scratch[ing] on the lower seam of the

driver's side door." (Trescott Dep. at 39:24-39:25). While Plaintiff takes issue with the video evidence, the partially obscured view of the dog's indication does not give rise to the inference that an indication did not in fact occur, nor does it negate the audible scratching sounds that can be heard on the video.

The video shows that almost immediately after Onyx's indication, Defendant Trescott told Defendant Jedic that the dog gave a positive indication of the presence of a controlled dangerous substance. (Trescott SMF ¶ 9; DVD at 15:57:41-15:57:48). Defendant Trescott pointed out to Defendant Jedic how the dog had moved back and forth and remarked, "[i]t's not the strongest odor, but it's there." (DVD at 15:58:13-15:58:21). Defendants subsequently applied for a search warrant before the Honorable Robert Mega, J.S.C., sitting in Union County. (Trescott SMF ¶ 10; Pl. Resp. to Trescott SMF ¶ 10).

In testifying in support of the search warrant application, Defendant Jedic explained that he detected what he believed to be the odor of raw marijuana coming from Plaintiff's vehicle. (D.E. No. 69-3, Ex. F ("Application for Search Warrant") at 3). Defendant Jedic explained to Judge Mega that the odor "smelled a bit more vegative [sic] to me than it did burnt. And again, it was strong enough to where it in my opinion, overpowered even the air freshener that was in the car." (*Id.* at 4). Thereafter, Defendant Trescott testified in support of the search warrant application and explained that, when he ran the dog around the car and "came from the front towards the driver's side, the dog showed some interest." (*Id.* at 5). Defendant Trescott testified that he "presented the bottom door seam, driver's door, and the dog gave me a positive indication by scratching." (*Id.*). Defendant Trescott further explained that this is the way his dog was trained to indicate when smelling narcotics and that he had witnessed this positive indication from Onyx hundreds of times. (*Id.* at 5-6). Ultimately, Judge Mega determined that probable cause existed

to have Plaintiff's vehicle towed, impounded, and searched, and he agreed to issue a search warrant. (*Id.* at 7).

After Defendants obtained a warrant, Plaintiff's vehicle was towed to a nearby garage and a search was conducted. (Trescott SMF ¶ 12; Pl. Resp. to Trescott SMF ¶ 12). The search of Plaintiff's car did not uncover any contraband or marijuana, and Plaintiff's car was ultimately released to him. (Trescott SMF 13; Pl. Resp. to Trescott SMF ¶ 13).

On December 23, 2011, Plaintiff filed a Complaint, asserting 42 U.S.C. § 1983 claims against Sergeant Thomas Jedic, Sheriff's Officer Glen Trescott, Borough of Fanwood, Borough of Fanwood Police Department, and Union County Sheriff's Department. (D.E. No. 1, Complaint ("Compl.")).[3] Plaintiff alleges that Defendant Jedic initiated an unlawful vehicle stop in violation of the Fourth Amendment, the procedural due process clause of the Fourteenth Amendment, and the equal protection clause of the Fourteenth Amendment. (*Id.* ¶¶ 35, 37). Plaintiff also asserts that the traffic stop was "motivated solely and exclusively by racial discrimination in violation of the Law Against Discrimination, codified at N.J.S.A. 10:5-1 *et seq.* as the Plaintiff . . . is an African American." (*Id.* ¶ 36) (emphasis omitted).

Additionally, Plaintiff alleges that Defendants Jedic and Trescott fabricated testimony during the probable cause hearing before Judge Mega and that the search warrant was, therefore, improperly procured. (*Id.* ¶¶ 38, 40). Plaintiff alleges that Defendants thereby violated the Fourth Amendment, the procedural due process clause of the Fourteenth Amendment, and the equal protection clause of the Fourteenth Amendment. (*Id.* ¶ 38). Plaintiff further alleges that the officers' "willful, wanton and malicious acts in presenting the Judge with fabricated information

[3] By letter order dated August 6, 2014, the Court dismissed Borough of Fanwood, Fanwood Police Department, and Union County Sherriff's Department as Defendants. (D.E. No. 68). Thus, the Court only details the claims against the remaining Defendants, Sergeant Thomas Jedic and Sheriff's Officer Glen Trescott.

and false testimony . . . amounted to a conspiracy . . . in violation of 42 U.S.C. 1985(3)." (*Id.*) (emphasis omitted).

Plaintiff also asserts various state law claims against the officers. Plaintiff alleges that "all of the unlawful and unconstitutional acts committed" by Defendants Jedic and Trescott "serve as the backdrop and foundation for the assertion of his common law claims for false or unlawful imprisonment and malicious abuse of process, as well as for the assertion of his state statutory claims that the defendants . . . violated multiple provisions of the New Jersey Civil Rights Act of 2004 codified at N.J.S.A. 10:6-2." (*Id.* ¶ 39) (emphasis omitted). Plaintiff further alleges that Defendants violated Article 1, Paragraphs 1, 7, and 21 of the New Jersey Constitution; N.J.S.A. 10:6-2; and N.J.S.A. 10:5-1. (*Id.* ¶ 46) (emphasis omitted).

Presently before the Court is the motion for summary judgment filed by Defendants Jedic and Trescott. (D.E. No. 69). The motion is fully briefed and ripe for adjudication.

## II. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, a court must consider all facts and their reasonable inferences in the light most favorable to the nonmoving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). However, where, as here, there is video footage related to the claims, the Court will not draw inferences that are inconsistent with the video evidence. *See Scott*, 550 U.S. at 380-81. Rather, the Court "view[s] the facts in the light depicted by the videotape." *See id.* at 381.

On a summary judgment motion, the moving party bears the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

(1986). The burden then shifts to the nonmoving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324. In opposing summary judgment, the nonmoving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The nonmoving party cannot rest upon the mere allegations or denials in its pleadings. *See Celotex*, 477 U.S. at 324. Furthermore, the nonmoving party cannot rely on speculation and conclusory allegations to defeat summary judgment. *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999).

## III. Discussion

### A. The Vehicle Stop

Plaintiff contends that Defendant Jedic lacked probable cause to initiate the motor vehicle stop and that the stop was in violation of the Fourth Amendment and the equal protection and procedural due process clauses of the Fourteenth Amendment.[4] (Compl. ¶¶ 35, 37; *see also* Pl. Opp. Br. at 26-27). In seeking summary judgment, Defendant Jedic argues that there was

[4] Plaintiff's procedural due process claim is subsumed by his Fourth Amendment claim. The Supreme Court has explained that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion) (internal quotation marks omitted); *see also Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) ("Substantive due process analysis is therefore inappropriate . . . if [plaintiff's] claim is 'covered by' the Fourth Amendment."). Although the Supreme Court developed this rule in the substantive due process context, courts have dismissed procedural due process claims where, as here, "the graveman [sic] of [the plaintiff's] lawsuit is so clearly premised on a . . . Fourth Amendment violation." *See Wilson v. City of Cherry Hill*, No. 10-3866, 2011 WL 3651274, at *8 n.12 (D.N.J. Aug. 18, 2011) (internal quotation marks omitted); *Regan v. Upper Darby Twp.*, No. 06-1686, 2009 WL 650377, at * 15 n.19 (E.D. Pa. Mar. 11, 2009) (dismissing procedural due process claim because "Plaintiff clearly base[d] her claim on alleged Fourth Amendment violations and arrest without probable cause"); *see also Bostrom v. N.J. Div. of Youth & Family Servs.*, 969 F. Supp. 2d 393, 415 (D.N.J. 2013) ("Plaintiffs have not alleged that they were deprived [of] a liberty or property interest which is not already addressed by Plaintiffs' . . . Fourth Amendment claims. If the court were to find that the Plaintiffs have established a deprivation of liberty on these facts, then all unreasonable searches would constitute procedural due process claims. This would be impractical and duplicative."). Accordingly, the Court dismisses Plaintiff's procedural due process claim with prejudice.

probable cause to initiate the motor vehicle stop and that he is also entitled to qualified immunity.

At the outset, the Court notes that reasonable suspicion, not probable cause, is the relevant standard for evaluating whether or not the vehicle stop at issue violated Plaintiff's Fourth Amendment rights. The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. amend. IV. A traffic stop constitutes a "seizure" within the meaning of the Fourth Amendment, "even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). "[A] traffic stop will be deemed a reasonable 'seizure' when an objective review of the facts shows that an officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop." *United States v. Delfin-Colina*, 464 F.3d 392, 398 (3d Cir. 2006). "Reasonable, articulable suspicion is a 'less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence.'" *Id.* at 396 (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)); *see also United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006) ("Courts give considerable deference to police officers' determinations of reasonable suspicion . . . ."). In determining whether a traffic stop was based on reasonable suspicion, courts "consider the totality of the circumstances—the whole picture." *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002) (internal quotation marks and citations omitted).

Plaintiff concedes that his door was not completely secured and that his rear tail lamp was missing part of its cover. (Pl. Resp. to Jedic SMF ¶¶ 5-6). Furthermore, it is undisputed that Defendant Jedic observed Plaintiff driving with a door that was not fully secured and noticed that a large portion of the translucent, red cover to his rear tail lamp was missing. (Jedic SMF ¶ 10; Pl. Resp. to Jedic SMF ¶ 10). Nonetheless, Plaintiff maintains that he did not have a defective taillight within the meaning of N.J.S.A. 39:3-66, and he argues that the vehicle stop was unlawful

as a result. (*Id.* ¶ 6).

Plaintiff's position rests on an erroneous interpretation of N.J.S.A. 39:3-66. This statute, which is entitled "Maintenance of Lamps, Reflectors, etc." provides that "[a]ll lamps, reflectors and other illuminating devices required by this article shall be kept clean and in good working order and, as far as practicable, shall be mounted in such a manner as to reduce the likelihood of their being obscured by mud or dust thrown up by the wheels." N.J.S.A. 39:3-66. Plaintiff narrowly interprets this statute and asserts that the statutory term "lamp" does not encompass the cover of a motor vehicle's lamp. Specifically, Plaintiff argues that the statute "never once mentions the 'cover' of a motor vehicle's lamp, and doesn't make the 'covers' to a vehicle's '. . . . lamps, reflectors [or] illuminating devices . . . .' expressly subject to its requirements." (Pl. Opp. Br. at 30) (emphasis omitted). Plaintiff contends that "[i]f the Legislature had intended the covers to a vehicle's '. . . . lamps, reflectors and illuminating devices . . . .' to be subject to the statute's requirements it could have easily added the words, 'and their covers' to the text of the Act, but the Legislature did not do that." (*Id.*) (emphasis omitted).

However, Plaintiff has cited no case law in support of his restrictive interpretation of the statute, and the Court does not read N.J.S.A. 39:3-66 so narrowly. As a preliminary matter, the ordinary meaning of the term lamp is not limited to the bulb itself. Rather, the term lamp refers to the entire apparatus, including the cover of the bulb. Furthermore, the fact that the statute requires that lamps be mounted in such a manner as to reduce the likelihood of being obscured confirms that the statute is not exclusively concerned with the condition of the bulb itself, but rather is also concerned with the condition of the lamp's cover. Finally, the phrase "other illuminating devices" could conceivably encompass the lamp cover. The Court concludes that Plaintiff's taillight was defective within the meaning of N.J.S.A. 39:3-66 because it was missing

a large portion of its cover and therefore was not "in good working order." Given Defendant Jedic's direct observation of this traffic violation, he had reasonable suspicion to warrant initiating the traffic stop. *See United States v. Bonner*, 363 F.3d 213, 216 (3d Cir. 2004) ("A police officer who observes a violation of state traffic laws may lawfully stop the car committing the violation." (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977))).

Notably, Plaintiff does not address whether the condition of his driver's door was in violation of N.J.S.A. 39:3-44, and he fails to respond to Defendant Jedic's contention that Plaintiff could have been cited for violating this provision as well. N.J.S.A. 39:3-44 provides that:

> No person shall hereafter drive, move, park or be in custody of nor shall any owner or lessee hereafter cause or knowingly permit to be driven, moved or parked on any highway any vehicle, motor vehicle or motor-drawn vehicle or combination of vehicles which *is in such unsafe condition as to endanger or be likely to endanger any person or property*, or which does not contain those parts or is not at all times, equipped with such equipment in proper condition and adjustment as required in this article, or which is equipped in any manner in violation of this article. No person shall do any act forbidden or fail to perform any act required under this article.

N.J.S.A. 39:3-44 (emphasis added). Plaintiff was clearly operating an unsafe vehicle, in violation of N.J.S.A. 39:3-44, given that his driver's door was not fully secured. Defendant Jedic's direct observation that Plaintiff was operating an unsafe vehicle provided him with yet another basis to initiate the traffic stop. *See Bonner*, 363 F.3d at 216.

The Court concludes that the vehicle stop was a reasonable seizure that did not violate Plaintiff's Fourth Amendment rights. Accordingly, the Court grants summary judgment to Defendant Jedic with respect to Plaintiff's Fourth Amendment unlawful stop claim and dismisses this claim with prejudice.[5]

[5] Because the Court concludes that the vehicle stop did not violate Plaintiff's Fourth Amendment rights, the Court does not analyze whether Defendant Jedic is entitled to qualified immunity. *See Gannaway v. Karetas*, 438 F. App'x 61, 67 (3d Cir. 2011) ("As there was no constitutional violation, we need not engage in an analysis of qualified immunity.").

**B. The Search Warrant**

Plaintiff alleges that Defendants Jedic and Trescott improperly procured a search warrant by perjuring themselves during the probable cause hearing before Judge Mega. (Compl. ¶¶ 38, 40). Plaintiff asserts Fourth Amendment, Fourteenth Amendment, and § 1985(3) conspiracy claims arising from the challenged search warrant. (*Id.* ¶ 38). In response, Defendants assert that they are entitled to qualified immunity.[6]

The doctrine of qualified immunity protects "government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012). Qualified immunity attaches if an official can demonstrate that his or her conduct was "objectively reasonable." *Davis v. Malitzki*, 451 F. App'x 228, 232 (3d Cir. 2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "There are two prongs to the objective reasonableness inquiry: first, whether the plaintiff's constitutional or statutory rights were in fact violated; second, whether it would have been clear to a reasonable officer that the conduct was unlawful." *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001)). If the official can show that at least one prong of the objective reasonableness inquiry is not satisfied, then he or she is entitled to qualified immunity. *Id.* "If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is

[6] Defendant Jedic also argues that Plaintiff should not even be permitted to maintain a claim against him with respect to his testimony before Judge Mega because Plaintiff's interrogatory responses "made no reference whatsoever to maintaining any claim against Sergent Jedic, other than as related to his initial stop of his motor vehicle and his issuance of a summons for violation of N.J.S.A. 39:3-66." (D.E. No. 69-4, Joint Brief in Support of F.R.C.P. 56 Motions for Summary Judgment of Defendants, Sergent Thomas Jedic and Sheriff's Officer Glenn Trescott ("Def. Mov. Br.") at 35). However, Defendant Jedic has cited no legal authority for deeming a claim to be abandoned based on a plaintiff's mere failure to provide a response to an interrogatory question. The Court declines Defendant Jedic's invitation to take such a punitive measure.

at an end; the officer is entitled to immunity." *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir. 2002).

The parties agree that the test set forth in *Franks v. Delaware*, 438 U.S. 154 (1978), is the relevant test for assessing Plaintiff's challenge to the validity of the search warrant. (Def. Mov. Br. at 37; Pl. Opp. Br. at 35); *see also Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997) ("A section 1983 plaintiff who challenges the validity of a search warrant by asserting that law enforcement agents submitted a false affidavit to the issuing judicial officer must satisfy the two-part test developed by the Supreme Court in *Franks v. Delaware* . . . ."). "Under *Franks* and its progeny, the plaintiff must prove, by a preponderance of the evidence, (1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause." *Sherwood*, 113 F.3d at 399.

Plaintiff has not submitted any evidence that Defendants "*knowingly and deliberately, or with a reckless disregard for the truth*, made false statements or omissions that create a falsehood in applying for a warrant." *See id.* (emphasis added). In fact, Plaintiff has not submitted any evidence of false statements whatsoever. As to Defendant Jedic, Plaintiff argues that Defendant Jedic perjured himself by telling Judge Mega that he detected the odor of marijuana emanating from Plaintiff's car and by testifying that this odor overpowered even the air freshener in the vehicle. (Pl. Opp. Br. at 39-40). Plaintiff points to the interchange between Defendant Jedic and his back-up officer as a basis for attacking Jedic's testimony. (*Id.* at 37-39). However, the entirety of the video evidence, along with Defendant Jedic's deposition testimony, indicates that Jedic smelled marijuana emanating from Plaintiff's vehicle. (*See* DVD at 15:17:04-15:17:11, 15:31:26-

15:31:35, 15:32:58-15:33:12; Jedic Dep. at 63:10-63:13). Defendant Jedic's lone remark about the strong smell of the air freshener does not give rise to the inference that Jedic presented fabricated testimony in support of the search warrant application.

As to Defendant Trescott, Plaintiff argues that Trescott provided false testimony to Judge Mega when he stated that Onyx gave a positive indication by scratching. (Pl. Opp. Br. at 42). As noted above, the video of the dog sniff, along with Defendant Trescott's deposition testimony, confirms that Onyx gave a positive indication by scratching the driver's side twice. Plaintiff has not presented any evidence to suggest that Defendant Trescott provided perjured testimony regarding the dog sniff.

Plaintiff also argues that Defendant Trescott withheld information that was material to Judge Mega's finding of probable cause. Specifically, Plaintiff points out that Defendant Trescott remarked to Defendant Jedic following the dog sniff that the odor was not the strongest. (*Id.*). Plaintiff has failed to demonstrate that the omission of Defendant Trescott's opinion regarding the strength of the odor was material to Judge Mega's finding of probable cause. As Defendant Trescott testified during his deposition, a dog gives a positive indication of the presence of narcotics by scratching. (Trescott Dep. at 18:8-19:15). Nothing in the record indicates that the strength of the odor itself has any bearing on whether or not a dog has given a positive indication. Furthermore, Third Circuit precedent confirms that a dog's positive alert is sufficient to establish the probable cause necessary for a search, thus making Defendant Trescott's opinion as to the strength of the odor immaterial. *See United States v. Pierce*, 622 F.3d 209, 213 (3d Cir. 2010) ("[A] dog's positive alert while sniffing the exterior of the car provides an officer with the probable cause necessary to search the car without a warrant."); *Karnes v. Skrutski*, 62 F.3d 485,

498 (3d Cir. 1995) ("[I]t is clear that the drug dog's alert would present probable cause for a search.").

In sum, Plaintiff has not presented evidence that Defendants made any material misrepresentations or omissions in support of the warrant application. Because there are no genuine issues of material fact and Plaintiff has failed to satisfy the *Franks v. Delaware* test, any claim premised on the insufficiency or invalidity of the search warrant fails. The Court thus concludes that Defendants Jedic and Trescott are entitled to qualified immunity with respect to Plaintiff's Fourth Amendment, Fourteenth Amendment, and § 1985(3) conspiracy claims arising from the challenged search warrant. *See Bennett*, 274 F.3d at 136 ("If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the officer is entitled to immunity."). Accordingly, the Court grants summary judgment to Defendants with respect to the Fourth Amendment, Fourteenth Amendment, and § 1985(3) claims arising from the challenged warrant, and the Court dismisses these claims with prejudice.

## IV. Remaining Claims

Although Defendants seek to dismiss the entire Complaint with prejudice, they have failed to address several of Plaintiff's claims in their submissions. As to Plaintiff's Fourteenth Amendment equal protection clause claim challenging Defendant Jedic's vehicle stop, Defendant Jedic did not move for summary judgment on this claim with specificity. The Court's resolution of Plaintiff's Fourth Amendment claim does not dispose of Plaintiff's Fourteenth Amendment equal protection clause claim. As the Third Circuit explained in *Carrasca v. Pomeroy*, "[t]he fact that there was no Fourth Amendment violation does not mean that one was not discriminatorily selected for enforcement of a law," since "equal protection claims under the Fourteenth Amendment require a wholly separate analysis from . . . claims under the Fourth Amendment."

313 F.3d 828, 836 (3d Cir. 2002); *see also Mitchell v. Twp. of Willingboro Municipality Gov't*, No. 11-1664, 2011 WL 3203677, at *5 (D.N.J. July 26, 2011) ("In order to bring an equal protection claim based on racial profiling under 42 U.S.C. 1983, Plaintiff must show that the officer's conduct (1) had a discriminatory effect and (2) was motivated by a discriminatory purpose." (citing *Bradley v. United States*, 299 F.3d 197, 205-06 (3d Cir. 2002))). Accordingly, the Court orders the parties to submit supplemental briefing addressing why Defendant Jedic is or is not entitled to summary judgment dismissing the remaining equal protection claim.

Additionally, as detailed above, Plaintiff has asserted numerous state law claims against Defendants. While Defendant Jedic moved for summary judgment with respect to Plaintiff's malicious abuse of process claim, both he and Defendant Trescott failed to discuss Plaintiff's other state law claims. The Court declines to address Plaintiff's state law claims at this time. In the event the Court grants summary judgment dismissing Plaintiff's remaining Fourteenth Amendment claim, there is a significant possibility that the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims. Accordingly, the Court will address Plaintiff's state law claims, if necessary, following the parties' supplemental briefing.

**V. Conclusion**

For the reasons set forth above, the Court grants Defendants' motion for summary judgment in part. The Court dismisses Plaintiff's Fourth Amendment and Fourteenth Amendment procedural due process claims arising from the challenged vehicle stop. Additionally, the Court dismisses Plaintiff's Fourth Amendment, Fourteenth Amendment, and § 1985(3) conspiracy claims arising from the challenged search warrant.

The parties are hereby ordered to submit supplemental briefing addressing Plaintiff's remaining Fourteenth Amendment equal protection clause claim against Defendant Jedic.

Defendant Jedic shall hereby submit a supplemental brief of no more than six pages within two weeks of the date that this Opinion is entered on the docket. Plaintiff shall hereby submit a response of no more than six pages within two weeks of the date that Defendant Jedic files his supplemental brief.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**